THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES M. PLATTS, Defendant-Appellant.

Second District    No. 2—93—1403

Opinion filed September 7, 1995.

G. Joseph Weller, Thomas A. Lilien, and Steven E. Wiltgen, all of State Appellate Defender's Office, of Elgin, for appellant.

Anthony M. Peccarelli, State's Attorney, of Wheaton (William L. Brow-

ers, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Howard M. Goldrich, of Chicago, for the People.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Defendant, James M. Platts, appeals his conviction of driving while his license was revoked (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 6—303 (now 625 ILCS 5/6—303 (West 1992))). The issue on appeal is whether a Canadian citizen whose Illinois driver's license has been revoked may be convicted of driving while his Illinois driver's license is revoked when simultaneously the defendant possesses a valid Canadian driver's license. We affirm the conviction.

On April 9, 1992, defendant, a Canadian citizen possessing a Canadian driver's license, was driving a motor vehicle registered in Canada. Defendant was stopped in Burr Ridge, Illinois, and was charged with driving while his Illinois license was revoked and driving under the influence of alcohol (Ill. Rev. Stat. 1991, ch. 95$^1$/2, par. 6—303 (now 625 ILCS 5/6—303 (West 1992))). Defendant once had an Illinois driver's license which was revoked and not reinstated. On May 24, 1993, the trial court denied defendant's motion to dismiss the charge of driving while his license was revoked. On September 21, 1993, after a bench trial with stipulated evidence, the trial court found defendant guilty of driving while his license was revoked. On the same date the defendant pleaded guilty to driving under the influence of alcohol. On October 1, 1993, the trial court sentenced defendant to 24 months' probation on the conviction of driving while under the influence of alcohol. On December 6, 1993, the trial court denied defendant's motion for a new trial or to reconsider the motion to dismiss the charge of driving while his license was revoked. The trial court then sentenced defendant to 22 months' probation on the conviction of driving while his license was revoked to run concurrently with the sentence for driving while under the influence of alcohol. Defendant filed a timely notice of appeal.

On appeal, defendant argues that he was entitled to drive in Illinois with his Canadian license because (1) Illinois failed to follow the notice provision of a treaty governing foreign drivers (Convention on Road Traffic, March 26, 1952, art. 25, 3 U.S.T. 3008, 3017) when defendant's Illinois driver's license was revoked; (2) defendant's Illinois revocation was terminated when he was issued a Canadian driver's license; and (3) defendant's revocation ended when he returned to Canada.

■ The United States has entered into a treaty with certain countries including Canada to allow drivers licensed by the participat-

ing countries to drive in the other countries that are parties to the treaty *without further examination.* (Convention on Road Traffic, March 26, 1952, 3 U.S.T. 3008.) Article 24 of the treaty states in relevant part:

"1. Each Contracting State shall allow any driver admitted to its territory *** who holds a valid driving permit issued to him *** by the competent authority of another Contracting State *** to drive on its roads *without further examination* motor vehicles *** for which the permit has been issued." (Emphasis added.) (Convention on Road Traffic, March 26, 1952, 3 U.S.T. at 3016.)

Article 25 of the treaty states in relevant part:

"The Contracting States undertake to communicate to each other such information as will enable them to establish *the identity* of persons holding domestic or international driving permits when they are liable to proceedings for a driving offence." (Emphasis added.) Convention on Road Traffic, March 26, 1952, 3 U.S.T. at 3017.

Defendant argues that, because Illinois did not notify Canada that defendant's Illinois license had been revoked, Canada could not revoke his Canadian license and defendant was entitled to drive in Illinois with his Canadian license pursuant to article 24 of the treaty. There is nothing in either section cited by defendant that relates to the abrogation of criminal prosecutions for violating Illinois laws, nor is there any mention of notification requirements for anything other than communication between contracting States as will enable a contracting State to establish the identity of a putative defendant. There is no provision for enforcing the sanctions granted a contracting State beyond its territorial borders. Furthermore, the treaty only allows the suspension of a Canadian or an international driver's permit while the defendant remains in the prosecuting State. The treaty only grants Illinois the authority to withdraw and retain a Canadian or an international permit under the articles cited by the defendant. The treaty is silent as to the enforcement of Illinois laws relating to revocation of Illinois licenses. Article 5 states in part:

"[I]t being understood that these matters and all other matters not provided for in this Convention remain within the competence of domestic legislation, subject to the application of other relevant international conventions or agreements." (Convention on Road Traffic, March 26, 1952, 3 U.S.T. at 3011.)

The defendant has not cited to other conventions or agreements which might control this "matter." The defendant compares article 25 of the treaty to section 6—202(c) of the Illinois Vehicle Code, which states:

"When a nonresident's operating privilege is suspended or

revoked, the Secretary of State shall forward a certified copy of the record of such action to the motor vehicle administrator in the State where such person resides." Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 6—202(c) (now 625 ILCS 5/6—202(c) (West 1992)).

In *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, the defendant moved to Texas in 1982. He allowed his Illinois license to expire and acquired a Texas license in its place. While visiting Illinois in 1984, he was convicted of driving under the influence of alcohol. He was notified that his Illinois driver's license, which had expired in 1982, was revoked. However, the Secretary of State failed to notify Texas authorities of defendant's conviction pursuant to section 6—202(c) of the Illinois Vehicle Code. Defendant was arrested in Illinois for driving while his license was revoked. (*Eberhardt*, 138 Ill. App. 3d at 148-49.) The court held that by not complying with the notice requirement of section 6—202(c), the State abandoned any right to claim that defendant could not operate as a nonresident under a valid foreign license. *Eberhardt*, 138 Ill. App. 3d at 150.

■ In the present case, defendant argues that, because the State failed to notify Canada pursuant to article 25 of the treaty, it abandoned any right to claim that defendant could not operate as a nonresident under a valid foreign license. Such an argument is immaterial and misdirected. The defendant is being punished for driving on a revoked Illinois license. His Canadian permit is irrelevant to the charge. Section 6—202(c) of the Illinois Vehicle Code is more specific than article 25 of the treaty because it not only sets forth the authority to revoke or suspend, but it also relates how these sanctions are to be instituted. Section 6—202(c) states that the Secretary of State *shall* send a certified copy of the revocation to defendant's home State. Article 25 of the treaty merely states the contracting States undertake to communicate to each other such information as will enable them to establish "*the identity* of persons holding domestic or international driving permits when they are liable to proceedings for a driving offence." (Emphasis added.) (Convention on Road Traffic, March 26, 1952, 3 U.S.T. at 3017.) There is no mention of a process, let alone the authorization, to revoke or suspend another contracting State's permit. Therefore, in the present case we conclude that the State's failure to notify Canada of the revocation did not preclude the State from claiming that defendant could not drive in Illinois under his Canadian license.

■ The defendant cites *People v. Hutson* (1989), 178 Ill. App. 3d 836, in support of his argument regarding parallel reciprocity. In *Hutson*, the defendant's Illinois driver's license was revoked. Defendant moved to Iowa. Iowa is a member of the driver license compact

(Ill. Rev. Stat. 1991, ch. 95 1/2, pars. 6—700 through 6—708 (now 625 ILCS 5/6—700 through 6—708 (West 1992))). Defendant obtained an Iowa driver's license. His Iowa license expired in January 1983. In 1984, defendant moved back to Illinois. He did not obtain an Illinois driver's license. Defendant was issued a citation for driving while his license was revoked. The court held that, because Iowa was a member of the driver license compact, the proper issuance of an Iowa driver's license terminates an Illinois revocation in the same way that the issuance of an Illinois license terminates an Illinois revocation. (*Hutson*, 178 Ill. App. 3d at 838.) Defendant argues that the issuance of a Canadian driver's license terminates an Illinois revocation in the same way that the issuance of an Iowa license terminates an Illinois revocation. However, under the compact, any party State, upon the receipt of an application for a license to drive, shall ascertain whether the applicant ever held a driver's license from another party State. (Ill. Rev. Stat. 1991, ch. 95 1/2, par. 6—704 (now 625 ILCS 5/6—704 (West 1992)).) A party State may not issue a license after revocation in another State unless one year has elapsed since the revocation and the issuing authority determines it will be safe to do so. (Ill. Rev. Stat. 1991, ch. 95 1/2, par. 6—704(2) (now 625 ILCS 5/6—704(2) (West 1992)).) The treaty places no such requirements on the contracting States. We conclude that the issuance of the Canadian permit was not connected or related to the defendant's Illinois revocation.

■ Defendant's final argument on appeal is that his revocation expired under article 24 of the treaty when he left Illinois. Article 24 states in relevant part:

"5. A Contracting State or a subdivision thereof may withdraw from the driver the right to use either of the above-mentioned permits only if the driver has committed a driving offence of such a nature as would entail the forfeiture of his driving permit under the legislation and regulations of that Contracting State. In such an event, the Contracting State or subdivision thereof withdrawing the use of the permit may withdraw and retain the permit until the period of the withdrawal of use expires or until the holder leaves the territory of that Contracting State, whichever is the earlier, and may record such withdrawal of use on the permit and communicate the name and address of the driver to the authority which issued the permit." Convention on Road Traffic, March 26, 1952, 3 U.S.T. at 3017.

Our reading of article 24 reveals that the provision limiting a contracting State to retaining the permit until the holder leaves the territory only applies to the permit of the *other* contracting State. Article 24 says that Illinois may withdraw and retain the Canadian

permit until such time as the defendant leaves the State of Illinois. It does not apply to the revocation or suspension of the Illinois license. Article 24 does not state that the holder's privilege to drive in Illinois is "renewed" when the holder leaves Illinois. Article 24 states that the "Canadian permit" is to be returned and validated so that the defendant may have possession of the permit in the State the defendant is entering. The defendant is erroneously attempting to interpret article 24 so that it applies to the right to drive pursuant to an Illinois driver's license rather than the right to drive pursuant to his Canadian permit.

We believe the defendant has erroneously attempted to apply article 24 of the treaty to the Illinois driver's license when the article relates to the withdrawal of the Canadian permit. We also believe the defendant has erroneously attempted to equate a treaty that authorizes communication to establish identities with the interstate compact that authorizes notification, and revocation or suspension of a license. The compact provides for reciprocity as to revocation or suspension. The treaty does not. The only reciprocity under the treaty relates to how certain matters are dealt with concerning vehicular traffic. Honoring or effectuating revocations, reciprocal or otherwise, is not covered by the treaty.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and THOMAS, JJ., concur.